**CLOSED CIVIL CASE**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 02-61169-CIV-MOORE

YASMIN IRANI,

    Plaintiff,

vs.

AMOCO OIL COMPANY, *et al.*,

    Defendant.

_____/



FILED by _____ D.C.

OCT  9 2002

CLERK, U.S. DIST. CT.
S.D. OF FLA. MIAMI

**ORDER GRANTING MOTION
TO REMAND**

**THIS CAUSE** is before the Court upon Plaintiff's "Emergency" Motion to Remand and for Sanctions (**DE # 8**). Response and reply have been filed.

Plaintiff filed a Complaint against Defendants Amoco Oil Company ("Amoco Oil") and its corporate representative Katlin Bennett ("Bennett") on August 12, 2002 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Plaintiff traveled on five counts; (1) fraud, (2) negligent misrepresentation, (3) violation of the Florida Deceptive and Unfair Trade Practices Act, (4) temporary and permanent prohibitory injunctive relief, and (5) a second count for temporary and permanent injunctive relief. The Complaint alleges that Plaintiff relied on misrepresentations by both Defendants and entered a Transfer Agreement for an Amoco service station. Plaintiff claims that she did not realize that the Agreement was for a four year term only, as Defendants represented that the four year term was an initial one subject to automatic renewal for two more consecutive terms of four years each - a twelve year term in all.

On August 21, 2002 Defendant Amoco Oil removed this case to federal court on diversity grounds. Plaintiff filed an "emergency" motion to remand on August 27, 2002. The Court declined to hear the said motion on an expedited basis, and now has the benefit of full briefing by the parties for determination of the issues at hand. As the removing party, Defendant Amoco Oil maintains the burden of showing that removal is proper. *See BCC Apartments, Ltd. v. Browning*, 994 F. Supp. 1440, 1442 (S.D. Fla. 1997).

**Diversity jurisdiction**

Plaintiff argues in its motion to remand that Defendant Amoco Oil, as demonstrated in one of its Commissioner Marketer Agreements, designates its principal place of business as Florida, thereby defeating diversity jurisdiction in the above-styled matter.  As Defendant Amoco Oil demonstrates however, diversity existed at the time of filing of the case and when it issued a notice of removal.  *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), superseded by statute on other grounds as recognized in *Wilson v. Gen'l Motors Corp.*, 888 F.2d 779 (11th Cir. 1989).  On July 8, 2002 and August 2, 2002, the date the Complaint was filed and the date of removal respectively, Defendant Amoco Oil was a Maryland corporation with its principal place of business in Illinois.  Plaintiff's reliance on a two-year old contract to determine Defendant Amoco Oil's place of business for citizenship purposes was misplaced.  In her reply Plaintiff does not contest that Defendant's principal place of business is in Illinois, not Florida.

Plaintiff also does not contest that her Complaint includes damage allegations of an amount over $100,000.00, thereby satisfying the federal amount in controversy requirement of $75,000.00.  *See Tapscott v. M.S. Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).


**Fraudulent joinder**

As diversity exists between Plaintiff and Defendant Amoco Oil, and there is no federal question involved, Defendant maintains that Plaintiff fraudulently joined Defendant Bennett in an effort to destroy diversity and avoid removal.  The burden rests on Defendant to demonstrate that (1) there is no possibility that the plaintiff would be able to state a cause of action against the resident defendant in state court or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts.  *See Coker*, 709 F.2d at 1440; *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  *Coker* 709 F.2d at 1440-41.  In addition, the court must evaluate factual allegations and

2

resolve any uncertainties concerning state substantive law in the plaintiff's favor. *Crowe*, 113 F.3d at 1538. This analysis approximates that used in consideration of a motion for summary judgment under Fed. R. Civ. P. 56(b), but the Court must now allow the jurisdictional inquiry to subsume "substantive determination." *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549-50 (5th Cir. Unit A 1981). The plaintiff's claim is not to be evaluated beyond the determination that he has an arguable state law cause of action. *Id.* at 548-89. The Court finds that Defendant has failed to show either that Plaintiff has no possibility of stating a cause of action against Bennett in state court or that Plaintiff has acted fraudulently in pleading the jurisdictional facts.

Defendant's main argument is that Plaintiff cannot maintain its tort claims against Defendant, as such claims are precluded by Florida's economic loss rule. This rule bars a plaintiff from bringing tort claims to recover pure economic damages arising from a breach of contract cause of action absent personal injury or property damages. *See Jones v. Childers*, 18 F.3d 899, 904 (11th Cir. 1994). However, the Florida Supreme Court found that the economic loss rule did not eliminate "causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1997). The Florida Supreme Court found that fraudulent inducement was an independent tort that required proof of facts separate from a breach of contract action. *Id.* at 1239. The allegations brought by Plaintiff in his two counts for fraud and negligent misrepresentation set forth a claim for fraudulent inducement. *See Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.*, 982 F. Supp. 873, 881 (S.D. Fla. 1997). Accordingly, Plaintiff argues that she has properly stated a state claim against Defendant Bennett, and thereby diversity does not exist.

However, statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring a fraud claim. *See Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1362 (S.D. Fla. 2000); *Bates v. Rosique*, 777 So.2d 980, 982 (Fla. 3d DCA 2001); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310,1318-19 (S.D. Fla. 2002) (finding that fraudulent inducement claim

3

was insufficient to survive economic loss rule as it was effectively a breach of contract or fraud in the performance claim labeled as a fraudulent inducement action). *See also Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1056 (Fla. 4th DCA 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract").

In her Complaint Plaintiff alleges that Amoco Oil, through its corporate representative Bennett, made representations on November 15, 2000 to induce her to enter the Commission Marketer Transfer Agreement ("Transfer Agreement"). These representations concerned the length of the Agreement term; Plaintiff claims that she understood, based on what she was told by Defendants, that the Agreement's initial term was for four years (approximately two years remained on this initial term), and would automatically renew for 2 further consecutive terms of four years each. In her two counts for fraud and negligent misrepresentation, Plaintiff only includes allegations about the misrepresentations of the length of the Agreement and her reliance thereon.

According to the Complaint, on November 15, 2000, Cam Cornish transferred its interest in an Amoco station to Plaintiff after meeting with Amoco's corporate representative, as represented in the 2000 Transfer Agreement.[1] Cam Cornish had entered into a four-year Commission Marketer Agreement ("Agreement") and a four-year Commission Marketer Lease ("Lease") with Amoco Oil (n/k/a BP Products North America, Inc.) on October 6, 1998. The Marketer Agreement and the Lease both specify that the term is for four years. *See* ¶ 2 of Exhibit A and ¶ 3 of Exhibit B to Defendant's Memorandum in response to Plaintiff's Motion to Remand. ¶ 3 of the Marketer Agreement provides

> Marketer acknowledges and understands that its right to use and dispense motor fuels from the Fuel Facility is only for the time period stated in this Agreement and is subject to the provisions of this Agreement. Marketer specifically acknowledges that no representations of any kind have been made to the contrary.

In addition, ¶ 23(D) of the same Agreement states that the Agreement

> shall terminate upon the termination, nonrenewal or expiration, for any reason, of the

---

[1] Exhibit C of Defendant's Memorandum of Law in Opposition to Plaintiff's Emergency Motion to Remand and for Sanctions.

4

> Lease. Marketer acknowledges and understands that upon the termination, nonrenewal or expiration of this Agreement and/or the Lease, Amoco may discontinue operations at the Facility or may continue in possession of the Facility and operate it with its own employees or establish operations by a contractor, dealer and/or jobber and may, without limitation, transfer, operate or use the Facility in any manner for any purpose.

A similar provision appears in the Lease Agreement at ¶ 19(D).

Both the Agreement and the Lease also contain merger clauses which provide in part that "No representations or statements other than those expressly set forth herein have been relied upon by the parties in entering into this Agreement." *See* ¶ 28 of Agreement and ¶ 30 of Lease. The Transfer Agreement that Plaintiff signed also contained an integration clause in ¶ VI(B) which provides that the agreement, "the attachments hereto and to documents referred to herein, constitute the entire agreement among the parties with respect to the subject matter hereof. No amendment shall be binding unless in writing and signed by the party against whom enforcement is sought."

It is clear from this simple review of the contracts at issue and Plaintiff's Complaint that these alleged oral false statements made at the November 2000 meeting solely concerned the duration of the Agreement. The two tort claims therefore are not distinct from Plaintiff's breach of contract allegations. *See Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1347 (S.D. Fla. 1998). The misrepresentations on which Plaintiff claims reliance and subsequent damage were contradicted in the provisions of the Transfer Agreement she signed. *See Hillcrest Pacific Corp.*, 727 So.2d at 1056; *Bates*, 777 So.2d at 982. Plaintiff cannot now seek to avoid application of the economic loss rule by construing her tort claims as independent from her breach of contract action. Judge Ryskamp's admonition in *Eclipse Med., Inc. v. American Hydro-Surgical Instruments, Inc.*, No. 96-8532-CIV-RYSKAMP, 1999 WL 181412, at *6 (S.D. Fla. Jan. 20, 1999) is applicable here; "It is patently unreasonable for [Plaintiff] to rely on a promise that the Agreement would be renewed annually...based on performance where the Agreement specifically and unambiguously creates only a single renewal term based on performance."

Plaintiff asserts that the presence of a merger clause is not an impediment to bringing a fraudulent inducement claim, citing *Noack v. Blue Cross and Blue Shield of Fla., Inc.*, 742 So.2d 433, 434 (Fla. 1st DCA 1999). *Noack* references the case *Wilson v. Equitable Life Assurance Soc'y*, 622 So.2d 25, 27 (Fla. 2d DCA 1993) for this proposition. However, upon review, the reader will find that

*Wilson* actually supports Defendant Amoco Oil's position rather than Plaintiff's. *Wilson* involved a claim of fraudulent inducement into an employment contract, but it did not concern a misrepresentation that expressly contradicted specific language of the contract. The court in *Wilson* found that the contract "simply ha[d] no explicit language discussing or foreclosing the possibility of a future arrangement as an agency manager with a guaranteed salary." In comparison, the *Wilson* court recognized that Florida courts found claims for fraudulent inducement barred when the alleged misrepresentation explicitly contradicted an unambiguous provision in a written contract. *Id.* at 28.

### Florida Deceptive and Unfair Trade Practices Act claim[2]

As Plaintiff's claims for fraud and negligent misrepresentation against Defendant Bennett are barred by the economic loss rule, the sole state claim remaining against Bennett is contained in Count III; a claim pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et. seq.* Defendant argues that Plaintiff cannot proceed on this claim, as it is simply a reallegation of her failed tort claims. In addition, Defendant argues that Plaintiff has not properly pled a claim pursuant to the statute as to Defendant Bennett. Plaintiff only makes one allegation as to Defendant Bennett under this count, and does not assert that Bennett is engaged in the "conduct of any trade or commerce". Fla. Stat. § 501.204(1). However, Defendant has failed to carry its burden of showing that there is no possibility that Plaintiff would be able to state a cause of action against Bennett in state court. Contrary to Amoco Oil's assertion, FDUTPA has been amended by the Florida Legislature effective July 1, 2001, allowing any *person*, rather than only consumers, to bring a cause of action under the statute.[3] *See* Fla. Stat. § 501.211(2) amended July 1, 2001. *See also Niles Audio Corp.*

---

[2] Plaintiff's statutory cause of action under FDUTPA is not barred by the economic loss rule. *See Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602 (Fla. 2d DCA 1997); *Comptech Int'l Inc. v. Milam Commerce Park*, 753 So.2d 1219 (Fla. 1999).

[3] Fla. Stat. § 501.211(2) provides that "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part."

*v. OEM Sys. Co., Inc.*, 174 F. Supp. 2d 1315, 1319-20 (S.D. Fla. 2001). Alternatively, Defendant Amoco asserts that Plaintiff's signing of a contract whose terms expressly contradicted the alleged misrepresentations on which she relied bars her from seeking relief pursuant to FDUTPA, as she acted unreasonably. *See Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000). However, at this stage, this Court cannot conclude as a matter of law that the alleged misrepresentation was unlikely to mislead a plaintiff acting reasonably under the circumstances and to her detriment[4]. The allegations, if proven, may permit a fact finder to conclude that Plaintiff's reliance on the statements made by Bennett at the November 15, 2000 contract signing was reasonable.

Defendant Amoco further contests the applicability of FDUTPA to the instant case.[5] Defendant contends that in order to successfully bring a FDUTPA claim, there must be a demonstration of a regular or systematic "method" or "practice". *Beacon Property Mgmt., Inc. v. PNR, Inc.*, 785 So. 2d 564, 568 (Fla. 4th DCA 2001). Furthermore, Defendant asserts that under FDUTPA "a single instance of doing something does not make it a method or practice" and therefore, since the allegations as to Defendant Bennett relate solely to one transaction and the wrongful "policy, pattern and practice" is alleged only against Amoco, there can be no sustainable FDUTPA claim against Defendant Bennett. The Defendant's reliance on *Beacon* as it relates to the facts in the instant action is misplaced as they are easily distinguishable. The facts in *Beacon* relate to the breach of a commercial lease and the evidence is limited to a specific lease

---

[4]"Since FDUTPA is the state counterpart to the Federal Trade Commission Act, in deciding whether an act or practice may be deemed deceptive, we must give due consideration and great weight to the interpretations made by the Federal Trade Commission and the federal courts." *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000). "The commission will find deception if there is a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* quoting *Southwest Sunsites, Inc. v. Federal Trade Commission*, 785 F.2d 1431 (9th Cir. 1986).

[5]  On September 5, 2002, this Court entered an Order of Remand in the related case Fernandez v. BP Amoco and Joseph Tamayo, Case No. 02-22297 CIV-MOORE. Defendant has timely supplemented their response in this case as result of said Order and therefore the issues raised therein are now addressed by this Court.

transaction and not franchisee/commission marketer agreements.  Additionally, the court in *Beacon* ruled that "the evidence does not suggest any effect on competition in the relevant market of commercial landlords." *Id.*  Here, it is clear that the methods or practices alleged relate to instances over the course of negotiations by the Defendants which could suggest a pattern of prohibited practices.  In *Kelly v. Nelson Mullins, Riley & Scarborough, L.L.P.*, the court distinguished *Beacon* by noting that multiple instances of wrongdoing perpetrated over a number of years is sufficient grounds for a FDUTPA claim.  2002 WL 598427 * 9 (M.D.Fla.).  The evidence before this Court would also indicate that the methods or practices alleged would suggest a significant effect on competition within the relevant market of gasoline service stations. Accordingly,  Defendant has failed to meet its burden of proving that there is no possibility that the plaintiff would be able to state a cause of action against the resident defendant in state court.

Accordingly, the Court finds that Plaintiff has not fraudulently joined Defendant Bennett. Diversity is defeated with the presence of Defendant Bennett, as she is a citizen of the State of Florida. *See* Notice of Removal at 2.  Defendant Amoco Oil removed the above-styled matter on diversity grounds; now that diversity is no longer complete this matter should be remanded for state court consideration.  Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand is **GRANTED**.  The above-styled matter is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.  The Clerk of the Court is directed to mark this case as **CLOSED**.  All pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _____ day of October, 2002.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

copies provided:
All counsel of record

8